GUILLERMO ATILES MORÉU, ADMINISTRADOR DEL FONDO DEL SEGURO DEL ESTADO, recurrente, *v.* LA COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., y AGUSTÍN ARROYO SÁNCHEZ, recurridos.

Núm. 427. *Sometido:* Abril 3, 1950. *Resuelto:* Abril 27, 1950.

*Ángel de Jesús Matos, Carlos N. Souffront, M. Maldonado Pacheco, J. C. Ramos Vázquez* y *Luis Muñoz Álvarez,* abogados del recurrente; el obrero recurrido no compareció.

EL JUEZ PRESIDENTE SEÑOR DE JESÚS emitió la opinión del tribunal.

Hace más de veinte años el obrero Agustín Arroyo Sánchez sufrió un accidente del trabajo. Su patrono entonces, la Central Guánica, era su propio segurador y le pagó $111.50 como compensación por la lesión parcial permanente que el obrero sufrió en su mano izquierda. El 16 de abril de 1948, el referido obrero sufrió otro accidente en la misma mano aumentando su incapacidad. El Fondo del Seguro del Estado, aplicando el artículo 3, inciso 4, de la Ley núm. 284 de 15 de mayo de 1945 (pág. 1037) (1) determinó que debía deducirse de la compensación a que tenía derecho por la inca-

---

(1) El artículo 3, inciso 4, de la Ley núm. 284 de 15 de mayo de 1945, en lo pertinente, prescribe:

"Artículo 3.—Todo obrero o empleado que sufriere lesiones o enfermedades ocupacionales dentro de las condiciones de esta Ley tal y como se establece en el artículo 2, tendrá derecho:

"Incapacidades Preexistentes:

". . . . . . . pero en aquellos casos en que un obrero sufriera la agravación o aumento de una incapacidad preexistente causada por un accidente anterior y por la cual cobró la compensación correspondiente, se le descontará, de la compensación a que tenga derecho por la incapacidad global resultante, el montante de la compensación que recibió por su incapacidad preexistente; . . . . ."

pacidad global resultante el importe de la compensación que el obrero había recibido por su incapacidad preexistente. La Comisión Industrial revocó la decisión del Administrador del Fondo del Estado quien estableció entonces el presente recurso de revisión.

■■ La resolución recurrida descansa primordialmente en el siguiente razonamiento:

"Para la fecha en que le ocurriera a este obrero su accidente anterior, existía en Puerto Rico lo que se llamó la libre concurrencia en el seguro obrero, esto es, existían el Fondo del Seguro del Estado en competencia con las compañías de seguro privadas, y los patronos que optaron por ser ellos sus propios aseguradores después de prestar la correspondiente fianza. En el caso de los propios aseguradores, eran los patronos los que prestaban los servicios médicos y los que pagaban las compensaciones, estando los contratos celebrados entre esos patronos y los obreros lesionados, sujetos a la aprobación de la Comisión Industrial.

".      .      .      .      .      .      .      .

"Si ésa era la situación, y en este caso específico la incapacidad preexistente fué satisfecha por la Central Guánica, patrono que era su propio asegurador, no vemos por qué razón haya que reembolsarle ahora al Fondo del Estado, creado por una ley posterior, del montante de la compensación que ese patrono pagara a este obrero hace veinte años.

"El Fondo del Estado se estaría enriqueciendo a costa de la Central Guánica. Decimos esto, porque el Fondo del Estado, repetimos, no pagó nada a este obrero.

"La vigente ley no podía contemplar una situación semejante. Tenía que tener en mente el Legislador al hablar de incapacidades preexistentes, aquéllas que surgieron bajo el amparo de la vigente ley. Podría argumentarse que el obrero habrá de beneficiarse, por cuanto que cobró su incapacidad anterior de la Central Guánica, y ahora va a recibir una compensación completa del Fondo del Estado, y nosotros preguntamos: de acuerdo con el espíritu que informa esta legislación, entre beneficiar al Fondo del Estado y beneficiar a un obrero, ¿de qué lado debemos caer? Parece que la contestación es obvia. El obrero debe ser el beneficiado. Y al actuar en esta forma no estamos en manera alguna atentando contra los intereses o la solvencia, ya que el Fondo del Estado en este caso no pagó ni un solo centavo, y que

fué la Central Guánica, patrono entonces su propio asegurador, la que hizo efectiva la compensación."

No compartimos la opinión de la Comisión Industrial. El referido artículo no establece la distinción que ella ahora propugna. Si interpretásemos la ley en la forma que pretende la Comisión, nos conduciría al resultado de que aquellos obreros que al sufrir el accidente anterior tuvieron la suerte de estar trabajando para un patrono que era su propio asegurador, o que estaba asegurado con una compañía, percibirían una compensación completa, mientras los que entonces trabajaban para patronos asegurados con el Fondo del Seguro del Estado, al recibir luego otra lesión, de la compensación por la incapacidad global, se les deduciría lo que recibieron por el accidente anterior. No pudo ser la intención legislativa crear privilegios a favor de unos obreros que no deberían extenderse a los otros. Además, al hacerse la deducción provista por la ley, de nada a que realmente tuviera derecho el obrero, se le estaría privando, pues al recibir la compensación anterior, su lesión preexistente quedó resarcida. Si no se le hiciera tal deducción, el obrero estaría recibiendo doble compensación por una parte de su incapacidad, la motivada por el accidente anterior. Preferible es obviar el discrimen y que la cantidad deducida vaya a engrosar el acervo del Fondo del Estado para beneficio de todos los obreros, inclusive aquél a quien se le hace la deducción.

A nuestro juicio la proposición del Administrador del Fondo del Estado es correcta y debe ser sostenida. *Procede la revocación de la decisión de la Comisión Industrial de Puerto Rico.*